UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:23-CV-87-CRS-LLK

MICHAEL M.                                                                     PLAINTIFF

v.

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*                          DEFENDANT

## MEMORANDUM OPINION & ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff Michael M. ("Claimant") seeks judicial review of the Commissioner of Social Security's denial of his claims for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). This matter was referred to United States Magistrate Judge Lanny King for preparation of a report and recommendation ("Report"). On November 22, 2023, Magistrate Judge King issued a Report concluding that the administrative law judge's ("ALJ") decision denying DIB and SSI benefits should be affirmed (the "Report"). DN 20. On December 5, 2023, Claimant filed timely Objections to the Report. Objections, DN 21. This matter is now before the court for consideration of Claimant's Objections.

## I.       Background

### A.  Administrative History

Claimant filed his Title II DIB and Title XVI SSI applications on September 28, 2020. Four days before, Claimant was involved in a serious motor vehicle accident in which he sustained fractures throughout his legs and right foot, sternum, ulna, and lumbar vertebrae. Claimant was 37 years old. His claims were denied on January 4, 2021. Claimant moved for reconsideration and his claims were denied again on May 28, 2021. On June 14, 2021, Claimant requested a hearing. Claimant's request was granted, and a telephonic hearing was held on January 13, 2022. An impartial vocational expert provided testimony at the hearing. On March 21, 2022, the ALJ

issued a written decision. The ALJ evaluated the evidence under the required five-step process and concluded that Claimant "ha[d] not been under a disability within the meaning of the Social Security Act from September 24, 2020, through the date of [the] decision," March 21, 2022. ALJ Op., DN 12 at 24. Thereafter, Claimant requested review by the Appeals Council. On April 10, 2023, the Appeals Council denied Claimant's request for review. As a result, the ALJ's decision became final and subject to judicial review. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. § 422.210(a).

### B.  Claimant's Fact and Law Summary

Claimant sought judicial review of the Commissioner's decision in federal court. Pursuant to Sentence 4 of 42 U.S.C. § 405(g), Claimant requested entry of judgment in his favor for an award of DIB and SSI benefits or, in the alternative, remand to the Commissioner for rehearing.

In his Fact and Law Summary, Claimant lodged several objections to the ALJ's written decision. Claimant's Fact & Law Summary, DN 14 at 2, 5, 10–11. First, Claimant argued that the ALJ committed reversible error by declining to address the applicability of Listing 1.21 in her written decision. *Id.* at 2–5. Second, Claimant argued that the ALJ's residual functional capacity ("RFC") determination was unsupported by substantial evidence. *Id.* at 5–11. Third, Claimant argued that the hypothetical questions addressed to the vocational expert by the ALJ were unsupported by substantial evidence because they omitted Claimant's "pain level and [its] exacerbation with activity." *Id.* at 11. Also, throughout his brief, Claimant relied on an undated letter prepared by Dr. Henrik Berdel that was not before the ALJ, implying that given this letter, remand pursuant to Sentence 6 of 42 U.S.C. § 405(g) is warranted here. *Id.* at 4, 6, 9, 10, 12.

### C.  Magistrate Judge King's Report

In his Report, Magistrate Judge King carefully considered Claimant's objections to the ALJ's written decision. In the end, he found all the arguments unpersuasive, concluding that the ALJ's decision was supported by substantial evidence and that the ALJ did not otherwise err.

As explained by Magistrate Judge King, Claimant relies on a diagnosed lumbar hernia and post-operative treatment as evidence of his satisfying Listing 1.21. Claimant argues that the ALJ failed to address the listing and thus erred when she concluded that Claimant was not disabled. Listing 1.21 governs soft tissue injuries and abnormalities. Upon his review, Magistrate Judge King concluded that while the record shows that Claimant "suffers from 'recurrent lumbar hernia' 'with intestinal contents,'" Report, DN 20 at 3,[1]  Claimant did not carry his burden "of proving that the medical criteria of" Listing 1.21 were satisfied. *Id.* at 4 (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003)). That is, Magistrate Judge King found that the record did not raise a "'substantial question' that Listing 1.21 was satisfied." *Id.* (citing *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014)). Consequently, Magistrate Judge King found that the ALJ did not err by declining to address the applicability of Listing 1.21 in her decision.

Second, Magistrate Judge King rejected Claimant's argument that the ALJ's RFC determination was unsupported by substantial evidence because Claimant identified (1) "no treating or other medical source who opined greater restriction than found by the ALJ," *id.* at 5, and (2) "no compelling reason to second guess the ALJ's pain / credibility assessment." *Id.* at 6 (relying on *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017)).

---

[1] (quoting ALJ Op., DN 12 at 24, 28).

Based on his conclusion that the ALJ's RFC determination was supported by substantial evidence, Magistrate Judge King rejected Claimant's argument that the ALJ's hypothetical questions to the vocational expert did not accurately portray his limitations. Report, DN 20 at 6 (relying on *Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 380 (6th Cir. 2017)).

Finally, Magistrate Judge King rejected Claimant's implied contention that Dr. Berdel's opinion warrants remand pursuant to Sentence 6 of 42 U.S.C. § 405(g). Although Dr. Berdel's letter was not before the ALJ, as Magistrate Judge King observed,[2] he nonetheless considered Dr. Berdel's opinion "for the limited purpose of determining whether to grant a remand to the Commissioner for consideration of new and material evidence pursuant to Sentence 6 of 42 U.S.C. § 405(g)." *Id.* In the end, Magistrate Judge King concluded that remand was unwarranted because (1) Dr. Berdel's opinion was immaterial to the disposition of Claimant's disability claims and (2) Claimant failed to make a good cause showing for his failure to incorporate Dr. Berdel's opinion into the record at an earlier time. Report, DN 20 at 8 (citing *Koulizos v. Sec'y of Health & Human Servs.*, No. 85-1654, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986)).

### D. Claimant's Objections

Claimant objected to Magistrate Judge King's Report. Objections, DN 21. First, Claimant objected to Magistrate Judge King's finding that the ALJ did not err in declining to address the applicability of Listing 1.21 at step three in her written decision. *Id.* at 1–3. Second, Claimant objected to Magistrate Judge King's finding that the ALJ's RFC determination was supported by substantial evidence. *Id.* at 3–5. Third, Claimant objected to Magistrate Judge King's finding that

---

[2] Report, DN 20 at 6 (although Claimant "presented no sustained argument that Dr. Berdel's opinion warrants remand," Claimant's "arguments [were] peppered with passing references to the opinion of Dr. 'Berdel,' the opinion of his 'hernia surgeon,' and the opinion at page '36' of the administrative record.").

the ALJ's hypothetical questions accurately portrayed Claimant's limitations. *Id.* at 5–6. Fourth, Claimant objected to Magistrate Judge King's finding that a Sentence 6 remand is unjustified. *Id.* at 6.

## II.      Standard of Review

The court conducts a de novo review of the portions of Magistrate Judge King's Report to which Claimant has filed timely and specific written objections. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Specific objections "pinpoint those portions of the [magistrate judge's] report that the district court must specifically consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). The court may accept, reject, or modify, in whole or in part, the findings and recommendations made by Magistrate Judge King. 28 U.S.C. § 636(b)(1)(C).

In reviewing findings by an ALJ, the court must determine whether those findings are supported by substantial evidence and made pursuant to proper legal standards and nothing more. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 42 U.S.C. § 405(h). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal quotation marks omitted). An administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). The court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

## III.   Analysis

### A.  Claimant's First Objection: Satisfaction of Listing 1.21

As noted above, Claimant asserts that Magistrate Judge King, like the ALJ, erred in finding that his lumbar hernia and subsequent treatment do not satisfy Listing 1.21 and thus the court should reach a contrary conclusion. The court finds no error in Magistrate Judge King's report.

The third step of the sequential evaluation process requires the ALJ to evaluate whether a claimant's impairments satisfy the requirements of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter "Appendix 1"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The "listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Consequently, the medical criteria defining the listed impairments has been set "at a higher level of severity than the statutory standard." *Id.*

It is Claimant's burden "to show that his impairment matches a listing," and he only carries that burden by showing that his impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). Where Claimant's impairment is unlisted, he must show that it "is equivalent to a listed impairment" by "present[ing] medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (emphasis in original, internal quotation marks omitted).

ALJs are not required "to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson.*, 579 F. App'x at 432 (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). There is reversible error only where "the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under

a listing" and the ALJ declined to address it. *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925

(6th Cir. 1990)) (modification in original).

> A claimant must do more than point to evidence on which the ALJ could have based [her] finding to raise a "substantial question" as to whether [the claimant] has satisfied a listing. Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three.

*Id.* at 432–33 (internal citations omitted).

> Listing 1.21 defines as disabling the following medical impairment:
>
> *Soft tissue injury or abnormality under continuing surgical management* (see 1.00L), documented by A, B, and C:
>
> A.   Evidence confirms continuing surgical management (see 1.00O1) directed toward saving, reconstructing, or replacing the affected part of the body; AND
>
> B.   The surgical management has been, or is expected to be, ongoing for a continuous period of at least twelve months; AND
>
> C.   Maximum benefit from therapy (see 1.00O2) has not yet been achieved.

Appendix 1 at § 1.21.

Any soft tissue injury or abnormality that involves the "soft tissues of the body, whether

congenital or acquired," may qualify under Listing 1.21. *Id.* at § 1.00L1(a). To count as continuing

surgical management, "procedures and treatments must be directed toward saving, reconstructing,

or replacing the affected part of the body to re-establish or improve its function, and not for

cosmetic appearances alone." *Id.* at § 1.00L1(b). Surgical management includes the surgery itself,

"as well as various post-surgical procedures, surgical complications, infections or other medical

complications, related illnesses, or related treatments that delay [the] attainment of maximum

benefit from therapy." *Id.* at § 1.00L1(a). Maximum benefit from therapy is attained where "there

are no significant changes in physical findings or on appropriate imaging for any 6-month period

after the last surgical procedure or treatment." *Id.* at § 1.00O2. A soft tissue injury or abnormality

"is no longer under continuing surgical management . . . when the last surgical procedure or medical treatment directed toward the re-establishment or improvement of function of the involved part has occurred." *Id.* at § 1.00O1.

Listing 1.21 requires claimants to produce "evidence from an acceptable medical source(s) confirming that the surgical management has continued, or is expected to continue, for at least 12 months from the date of the first surgical intervention." *Id.* at § 1.00L1(b). Specifically, claimants must provide

> all of the following medically documented evidence about [their] continuing surgical management:
>
> a. Operative reports and related laboratory findings;
> b. Records of post-surgical procedures;
> c. Records of any surgical or medical complications (for example, related infections or systemic illnesses);
> d. Records of any prolonged post-operative recovery periods and related treatments (for example, surgeries and treatments for burns);
> e. An acceptable medical source's plans for additional surgeries; and
> f. Records detailing any other factors that have delayed, or that an acceptable medical source expects to delay, the saving, restoring, or replacing of the involved part for a continuous period of at least 12 months following the initiation of the surgical management.

*Id.*

The evidence Claimant produced does not demonstrate continued surgical management of his lumbar hernia for a period of twelve months or more. Claimant underwent hernia repair surgery once in May 2021. Administrative Record, DN 12 at 1099 (noting hernia repair surgery conducted on "May 26"). A month later, a CT scan revealed post-surgery soft tissue inflammation and "suspected fat necrosis." *Id.* at 897. However, a month after that, a repeat CT scan and physical examination revealed "normal" findings. *Id.* at 745; *see also id.* at 723 (noting in Claimant's September 22, 2021 progress notes that while "CTs previously . . . showed some necrotic area tissue," a "[r]epeat CT showed improvement"). In August 2021, Claimant received a left ilioinguinal nerve block for "pain management." *Id.* at 848–49. Then, in December 2021,

Claimant's surgeon ruled out hernia recurrence, observed that there was no evidence of infection and that the surgical site was well-healed, and noted that a recent MRI of Claimant's abdomen revealed "no acute findings." *Id.* at 1090. In sum, Claimant's hernia was nonrecurring, there was no evidence of post-operative infection, and the "suspected" necrotic tissue resolved without medical intervention. Accordingly, Claimant's post-operative treatment was limited to routine follow-up, imaging, and pain management.

Thus, as Magistrate Judge King rightly found, there is no evidence that Claimant underwent any post-operative procedure or treatment that was intended to "sav[e], reconstruct[], or replace[]" his abdomen as required to support a finding of disabled under Listing 1.21. Appendix 1 at § 1.00L1(b). Moreover, because the record does not raise a substantial question as to whether Claimant is disabled under Listing 1.21, Magistrate Judge King was also correct to find that the ALJ did not err by declining to address the listing in her written decision. *Smith-Johnson*, 579 F. App'x at 432.

### B. Claimant's Second Objection: The RFC Determination

Next, Claimant argues that Magistrate Judge King erred in finding that the ALJ's RFC determination was supported by substantial evidence. For the reasons below, the court detects no error in Magistrate Judge King's finding.

Between the third and fourth steps of the sequential evaluation process, the ALJ is tasked with determining the claimant's RFC. A claimant's RFC is the most he can do despite the combined effects of his medical impairments. 20 C.F.R. §§ 404.1545, 416.945. In making an RFC determination, the ALJ considers the record in its entirety. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Claimant bears the "evidentiary burden" of "proving his lack of residual functional capacity." *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019)

(citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)). "The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B) and 20 C.F.R. § 404.1546(c)). Thus, an ALJ's "residual functional capacity finding does not need to correspond to any particular physician's opinion." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)). That said, an ALJ "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for [her] decision." *Young v. Comm'r Soc. Sec.*, 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004). Instead, to support an RFC determination, an ALJ must "make a connection between the evidence relied on and the conclusion reached." *Tucker*, 775 F. App'x at 226.

### 1. Magistrate Judge King correctly found that substantial evidence supports the ALJ's RFC determination.

Both the ALJ and Magistrate Judge King considered all the medical records submitted by Claimant and considered Claimant's as well as his mother-in-law's testimony respecting Claimant's alleged pain. Magistrate Judge King found that the ALJ's assessment of Claimant's medical records was supported by substantial evidence as well as the ALJ's RFC determination. Having reviewed Magistrate Judge King's report, the ALJ's written decision, and the administrative record, the court agrees.

The ALJ's RFC analysis, prepared "[a]fter careful consideration of the entire record," ALJ Op., DN 12 at 27, constitutes five pages of her written decision, *id.* at 27–32. Throughout, the ALJ addressed both objective medical evidence and Claimant's subjective allegations regarding his alleged impairments and associated limitations. *See* 20 C.F.R. §§ 404.1545(a)(3),

416.945(a)(3) (requiring same). In the end, the ALJ determined that Claimant could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).[3] ALJ Op., DN 12 at 27.

As for the objective medical evidence of record, the ALJ chronicled the litany of injuries Claimant sustained after his involvement in a serious motor vehicle accident, *id.*; detailed Claimant's initial treatment at Mercy Health and subsequent treatment at Vanderbilt University Medical Center, *id.* at 28; referenced and described Claimant's follow up appointments with orthopedic surgeon Dr. Phillip Mitchell, M.D., and the progress of Claimant's recovery, including "routine healing" of the right hip and foot and attainment of full range of motion of the knee, ankle, and hip, *id.* at 28, 29; referenced and described Claimant's physical therapy appointments and detailed Claimant's progression from using a boot and crutches in order to walk to solely using a cane, *id.*; referenced Claimant's chiropractic appointments, during which he was assessed marked improvement, *id.* at 28; referenced and described Claimant's hernia-related appointments, including his initial emergency room visit, hernia repair surgery, and follow-up imaging, *id.* at 28–29; and detailed Claimant's pain management treatment at Lourdes Pain Management. *Id.* at 29.

As for the subjective evidence of record, including the testimony of Claimant and his mother-in-law, the ALJ chronicled Claimant's recent work history; discussed Claimant's use of Celebrex for inflammation, Zanaflex for sleeping assistance, and Wellbutrin for pain management; addressed Claimant's assertion of ongoing swelling in his right foot; acknowledged Claimant's testimony that he recently developed an umbilical hernia but noted that such "is a new impairment as radiological studies of record do not support recurrence of his lumbar hernia"; observed that Claimant was unaware of any lifting restrictions imposed by a treating physician; and detailed the

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) and 416.967(a).

subjective account of Claimant's pain and day-to-day life, such as his mother-in-law's testimony that Claimant can no longer play with his children or work on vehicles, and Claimant's testimony that he uses a motorized cart to shop for groceries, reclines the passenger seat of vehicles all the way back to accommodate his pain, sits in a shower chair while showering, and requires assistance to put away groceries, mow his lawn, and do the dishes. *Id.* at 31.

Additionally, the ALJ considered opinion evidence on Claimant's function. First, she noted that "no treating physician . . . offered an opinion that the claimant is restricted from the performance of all work." *Id.* at 30. The ALJ further remarked: "Given the claimant's allegations of total disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating source, but there are no such limitations of record." *Id.* Then, she considered the opinions of two state agency medical consultants: Drs. M. Bijpuria and Donna Farmer. Both opined that Claimant's fractures "were expected to heal and be non-severe within 12 months of the alleged onset date." *Id.* at 32. Dr. Bijpuria's opinion was rendered in November 2020 and Dr. Farmer's in May 2021, both well before the ALJ issued her written decision in March 2022. *See* Administrative Record, DN 12 at 73, 97. Thus, in light of "evidence of lumbar hernia, degenerative disc disease of the lumbar spine, and obesity combined with lower extremity pain requiring the use of a cane" that was unavailable at the time they rendered their opinions, the ALJ found the opinions to be unpersuasive. ALJ Op., DN 12 at 32. Thereafter, the ALJ found Claimant's function to be more limited than previously opined by Drs. Bijpuria and Farmer — the only medical opinions as to Claimant's function. *Id.*

Magistrate Judge King observed the same in his report. Report, DN 20 at 5–6. Specifically, he noted the ALJ's acknowledgment of "significant residual effects upon" Claimant's "RFC from the motor vehicle accident," discussed the opinions of Drs. Bijpuria and Farmer, and deferred to the ALJ's credibility assessment as to Claimant's subjective account of the debilitating effects of

his alleged symptoms. *Id.* In the end, Magistrate Judge King found that the ALJ's RFC determination was supported by substantial evidence.

The court agrees with Magistrate Judge King's finding. At every turn, the ALJ's RFC determination was supported by "more than a scintilla of evidence[.]" *McGlothin*, 299 F. App'x at 522. Indeed, relying on the objective evidence of record, the ALJ observed that it "is reasonable that the claimant cannot perform prolonged standing and walking at this point," and so found that "the objective evidence supports limiting the claimant to sedentary work with the use of a cane for walking." ALJ Op., DN 12 at 29. The ALJ then assessed Claimant's subjective account of his symptoms against the objective evidence of record and found that "the claimant's allegations of disabling pain and limitations . . . are not fully supported by the medical evidence of record, or of the severity to preclude all work for a period of 12 months or more," because Claimant's condition "will continue to improve with ongoing pain management." *Id.* at 30. Finally, considering all evidence of record, the ALJ discounted the only opinions on function to find Claimant *more* disabled than opined. *Id.* at 32. Substantial evidence supports the ALJ's conclusion, *Rogers*, 486 F.3d at 241; *McGlothin*, 299 F. App'x at 522, and Magistrate Judge King did not err in finding same.

### 2. Magistrate Judge King correctly found that the ALJ did not err in her consideration of Claimant's chiropractic and physical therapy records.

Claimant also argues, relying on *Young*,[4] a decision out of the Eastern District of Michigan,[5] that the ALJ's RFC determination cannot stand because the ALJ "did not explain why [she] relied on some portions of" Claimant's chiropractic and physical therapy records but "ignored others, such as pain scores, ranges of motion limitations and palpation findings that were

---

[4] 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004).
[5] Claimant erroneously cites *Young* as if it were a decision of the United States Court of Appeals for the Sixth Circuit. *See* Objections, DN 21 at 4–5. The court identifies this error only as a means of noting that the *Young* decision is not binding precedent.

omitted." Objections, DN 21 at 4 (citing *Young*, 351 F. Supp. 2d at 649). Essentially, his argument is that the ALJ's RFC determination is contradicted by the "omitted" portions of those medical records. *Id.* at 4–5 (referencing Claimant's Fact & Law Summary, DN 14 at 4–6). Having concluded that the ALJ's RFC determination was supported by substantial evidence, Magistrate Judge King did not address this specific argument in his report.

While it is generally true that an ALJ may not "base [her] decision entirely on a single piece of evidence, and disregard other pertinent evidence," or "pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale," *Young*, 351 F. Supp. 2d at 649, an ALJ is under no obligation to "directly address in [her] written decision every piece of evidence submitted by a party," *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Defense Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 456 (6th Cir. 1999)). Such a requirement would be unworkable. After discussing *Young*, the Eastern District of Kentucky reached the same conclusion in *Hardin v. Berryhill*: "the ALJ has discretion to weigh evidence in whatever manner he sees fit and, so long as the decision is based on substantial evidence, is not obligated to specifically reference every medical finding a claimant points to as support for a finding of disability." No. 5:17-cv-329-GFVT, 2018 WL 4568595, at *3 (E.D. Ky. Sept. 24, 2018).

Here, the ALJ did not cherry-pick portions of a single report as cautioned against by the Eastern District of Michigan in *Young*. Nor does the ALJ's RFC determination contradict the objective evidence of record. Rather, the ALJ considered the objective medical findings as reported by each medical provider, including Claimant's chiropractor and physical therapist, in determining Claimant's RFC. As to Claimant's chiropractic and physical therapy records, the ALJ wrote:

> [Claimant] began physical therapy in January 2021. He rated his pain a four on a scale of one to ten, ten being the worst pain. He reported right hip, foot and ankle pain, and left knee pain. He was not weight-bearing with the right lower extremity

unless requested. He had minimal edema bilaterally. He used a right walking boot. Strength was 2/5 about the right ankle and 4/5 about the right hip and knee. Strength was 4/5 about the left hip and ankle, and 3/5 about the left knee. He was using crutches. After 15 therapy visits, he continued to rate his pain a four, but he reported increased foot swelling after increased activity. He was ambulating with a cane. He demonstrated increased strength and endurance, but increased hip and foot pain after weight-bearing exercises. He reported walking 2-1/2 blocks with the cane on a level surface. The claimant was involved in chiropractic treatment in February and March for mid and lower back pain. He was diagnosed with spondylolisthesis at L4-5. He was assessed with marked improvement with improved activities of daily living.

ALJ Op., DN 12 at 28.

Contrary to Claimant's assertion, the chiropractic treatment records prepared by Mark Atnip, D.C., do not contradict the ALJ's account. At the beginning of Claimant's treatment, he was assessed with "very severe" "taught and tender fibers" in the thoracic and lumbar regions of the spine, "very severe" swelling at various vertebral segments, and "very severe" decreased range of motion at various vertebral segments. Administrative Record, DN 12 at 705. At that time, Claimant rated his pain as a 9/10. *Id.* Fifteen days later, he was assessed with "severe" "taught and tender fibers" in the thoracic and lumbar regions of the spine, "severe" swelling at various vertebral segments, and "severe" decreased range of motion at various vertebral segments. *Id.* at 707. Claimant's pain remained a 9/10. *Id.* A week later, Claimant was assessed with "moderate-severe" "taught and tender fibers" in the thoracic and lumbar regions of the spine, "moderate-severe" swelling at various vertebral segments, and "moderate-severe" decreased range of motion in the same vertebral segments. *Id.* at 708. Claimant's pain improved to an 8/10. *Id.* One week after that, Claimant was assessed with "moderate" "taught and tender fibers" in the thoracic region of the spine, "moderate-severe" "taught and tender fibers" in the lumbar region of the spine, and "moderate-severe" swelling at various vertebral segments. *Id.* at 710. Once again, Claimant's pain improved, rated as a 7/10. *Id.* Additionally, Dr. Atnip noted:

> the condition is improving according to the positive changes in [the] subjective and objective findings as well as the improvements in the activities of daily living. There are no contraindications to care, and based upon the results so far, the prognosis for [Claimant] is good because [Claimant] is responding well to the chiropractic care. Observed marked improvement in condition due to [Claimant's] compliance with treatment plan.

*Id.*

Likewise, the physical therapy treatment records prepared by Laura Wilkins, PTA, do not contradict the ALJ's account. At the beginning of Claimant's treatment with Wilkins on January 8, 2021, he was diagnosed with "R hip, L knee, R ankle/foot pain, decreased independence with ambulation." Administrative Record, DN 12 at 647. Five short-term goals (3–4 weeks) and four long-term goals (6–8 weeks) were set. *Id.* Throughout the course of treatment, Claimant made much progress. On March 5, 2021, Claimant reported that:

> he is walking longer distances now, requires use of **cane**. He has not had any falls but some 'close calls,' wearing compression stocking on his right foot that he bought. He concedes that **therapy** has been helping, now able to walk with **cane**. He is still having hip and back pain with tingling in his right foot.

*Id.* at 612 (emphasis in original). At that time, Claimant assessed his pain as a 6/10. *Id.* at 615.

In the most recent physical therapy record before the court, dated March 9, 2021, Claimant "show[ed] some increased strength by adding weight to walking exercises" and "improved endurance by increasing sets with some exercises," but reported "increased pain in hip and foot after [performing] weight bearing exercises." *Id.* at 608. Additionally, Claimant "met" two of his short-term goals and one of his long-term goals and made "progress" toward two of his short-term goals and two of his long-term goals. *Id.* at 609. Claimant assessed his pain as a 4/10. *Id.* at 608.

Claimant's chiropractic and physical therapy records objectively demonstrate that Claimant's physical condition improved substantially over a short period of time. Indeed, Claimant's prognosis was "good." *Id.* at 710. While his reported pain levels remained relatively high, they consistently decreased with time. Moreover, despite his pain levels, Claimant was

capable of walking "2 1/2 blocks with **cane** on level surface" and "470' in 4 minutes before sitting." *Id.* at 610 (emphasis in original). The ALJ factored all this into her RFC determination, ultimately finding that (1) Claimant's "allegations of disabling pain and limitations . . . are not fully supported by the medical evidence of record" and (2) Claimant can perform sedentary work. ALJ Op., DN 12 at 30.

Simply put, the medical records that Claimant directs the court to do not contradict the ALJs findings, nor was the ALJ obliged to "specifically reference" every finding she considered. *Hardin*, 2018 WL 4568595, at *3. Although Claimant is dissatisfied with the ALJ's evaluation of the evidence, the ALJ enjoyed discretion to evaluate and weigh the evidence as she saw fit. *Ulman*, 693 F.3d at 713; *Cutlip*, 25 F.3d at 286; *Hardin*, 2018 WL 4568595, at *3. The ALJ's evaluation of the evidence is entitled to deference by this court, *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007), particularly here, where the ALJ adequately connected the "evidence relied on" with "the conclusion reached" in her RFC determination. *Tucker*, 775 F. App'x at 226. Thus, Magistrate Judge King rightly concluded that the ALJ's RFC determination was supported by substantial evidence.

## C. Claimant's Third Objection: The ALJ's Hypotheticals

Claimant argues that Magistrate Judge King erred in finding that the ALJ's hypothetical questions accurately portrayed his impairments. Specifically, Claimant contends that the ALJ omitted Claimant's "pain level and [its] exacerbation with activity" from her hypothetical questions. Objections, DN 21 at 5–6. The court finds no error in Magistrate Judge King's report.

At step four of the sequential evaluation process, the ALJ considers whether the claimant has the RFC to perform the requirements of his past relevant work and, if not, at step five the ALJ considers whether the claimant is able to perform any other work considering his RFC, age, education, and work experience. To support a finding that a claimant is not disabled at step five,

the Commissioner is responsible for providing evidence that demonstrates other work exists in significant numbers in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(b)(3), 404.1560(c), 416.912(b)(3), 416.960(c).

Generally, the Commissioner relies on the testimony of vocational experts to support a finding of not-disabled at step five. "When the Commissioner seeks to rely on the testimony of" a vocational expert "to show the existence of a substantial number of jobs other than past work that the claimant can perform, the testimony must have been given in response to a hypothetical question that accurately portrays the claimant's physical and mental impairments." *Smith-Johnson*, 579 F. App'x at 436. A vocational expert's response to an improper hypothetical cannot serve as substantial evidence. *Id.* Thus, "hypothetical questions must incorporate only the limitations that the ALJ has accepted as reliable." *Id.*

As Magistrate Judge King rightly observed, the ALJ's hypothetical questions "reflect[ed] the ALJ's RFC determination." Report, DN 20 at 6; *see* Admin. Hear. Transcript, DN 12 at 63–65. Thus, Claimant's argument can only prevail if the ALJ's RFC determination lacks substantial evidentiary support — that is, this argument presupposes the success of Claimant's second objection. However, the ALJ's RFC determination is supported by substantial evidence, as discussed above. Likewise, the ALJ's hypothetical questions were proper as they incorporated "only the limitations" that the ALJ "accepted as reliable." *Smith-Johnson*, 579 F. App'x at 436; *see* Report, DN 20 at 6. Thus, Magistrate Judge King did not err by finding same.

### D.  Claimant's Fourth Objection: Sentence 6 Remand

#### 1.  Dr. Berdel's letter does not warrant remand pursuant to Sentence 6 of 42 U.S.C. § 405(g).

Where substantial evidence supports an ALJ's decision, but new and material evidence that was not before the ALJ could affect the claim's disposition, remand might be justified pursuant to Sentence 6 of 42 U.S.C. § 405(g). In relevant part, Sentence 6 reads:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

Essentially, a claimant must prove three elements to justify a Sentence 6 remand on the basis of new evidence: (1) there is new evidence that was unavailable at the time the ALJ issued her written decision; (2) the new evidence is material, that is, there is a "reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence," *Ferguson v. Comm'r*, 628 F.3d 269, 276 (6th Cir. 2010); and (3) the claimant shows "good cause for the failure to incorporate such evidence into the record in a prior proceeding." Sentence 6, 42 U.S.C. § 405(g).

Claimant argues that remand is justified pursuant to the above clause of Sentence 6 and that Magistrate Judge King erred in finding to the contrary. Objections, DN 21 at 6; *see* Report, DN 20 at 6 (considering Sentence 6 remand because Claimant relied on evidence that was not before the ALJ, despite the lack of any "sustained argument" on Sentence 6's applicability). Specifically, Claimant submits that an undated letter written by his hernia surgeon should be considered by the ALJ on remand. The letter was not before the ALJ at the time of her decision. The letter reads:

> I, Henrik Berdel, am a trauma surgeon at the University of Kentucky. [Claimant] has been in my care since May 2021 for a traumatic left flank hernia he suffered after motor vehicle collision. I performed successful repair of his hernia last May.

However, his symptoms unfortunately persist despite this. He suffers from severe pain and swelling in the area that is debilitating to the degree that some days he is unable to get out of bed. A hernia recurrence has been ruled Out [sic]. He has not been able to work due to the severe pain. I have referred him to a pain clinic and his day-to-day life remains significantly impacted by this in addition to the other sequalae of the motor vehicle collision. In my opinion he should strongly be considered for disability – this is unlikely to improve with time, and he will have to fight this for the remainder of his life.

Berdel Letter, DN 12 at 40.

Dr. Berdel's letter does not meet the three elements required to justify a Sentence 6 remand. The letter is undated, so there is no proof that it is "new" and was unavailable at the time the ALJ issued her written decision. Sentence 6, 42 U.S.C. § 405(g). Moreover, opinions like Dr. Berdel's, which state that a claimant is disabled but which fail to provide descriptions of a claimant's "functional abilities and limitations," are generally categorized as "[s]tatements on issues reserved to the Commissioner" and are "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c)(3)(i), (v). Dr. Berdel's opinion is thus immaterial, as it could not reasonably result in a different disposition of Claimant's claims. *Ferguson*, 628 F.3d at 276. Lastly, Claimant failed to make a good cause showing for his failure to incorporate the letter into the record earlier. *See* Sentence 6, 42 U.S.C. § 405(g); Objections, DN 21 at 6 (asserting that "[t]he issues of good cause and materiality are not before the Court" and declining to address either). Thus, Magistrate Judge King did not err when he found that remand pursuant to Sentence 6 of 42 U.S.C. § 405(g) is unwarranted.

## 2. The Appeals Council was under no obligation to affirm that it reviewed the entire record in its Notice of Denial.

Claimant argues that, before reaching federal court, the Appeals Council committed reversible error by not including a statement in its Notice denying Claimant's request for review affirming "that it considered the record as a whole when making its determination on the new evidence." Objections, DN 21 at 6. This issue was not raised in Claimant's Fact and Law Summary,

*see* DN 14, and so was not before Magistrate Judge King. "[A]bsent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate [judge]." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Thus, Claimant waived this objection.

Nonetheless, the argument is unavailing because Claimant misunderstands the function of the Appeals Council's Notice. The Appeals Council's Notice was not itself a "decision" or a "determination" on the merits. *See* 20 C.F.R. §§ 404.981, 416.1481 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision."). Instead, the Notice denied Claimant's request for the Appeals Council to review the ALJ's decision and as such is "analogous to denial of certiorari." *Johnmark C. v. Comm'r of Soc. Sec.*, No. 1:21-CV-736-DB, 2023 WL 6977430, at *12 (W.D.N.Y. Oct. 23, 2023). The regulations do not specify what information must be included in a denial notice. *See* 20 C.F.R. §§ 404.967, 416.1467 (requiring Appeals Council to notify the parties of action); 20 C.F.R. §§ 404.973, 416.1473 (specifying information required where "the Appeals Council decides to review a case," but not specifying information required where the Appeals Council declines to review a case); *see also Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784–85 (11th Cir. 2014) (collecting cases from the Fourth, Fifth, Ninth, and Tenth Circuits and holding that "the Appeals Council is not required to explain its rationale for denying a request for review"). Thus, the Appeals Council was under no obligation to include a statement affirming that it considered the record as a whole in deciding to deny Claimant's request for review.

## IV.    Conclusion

The court finds no error in Magistrate Judge King's recommendation that remand pursuant to Sentence 4 of 42 U.S.C. § 405(g) is unwarranted. Upon review, the court agrees that (1) the record does not raise a substantial question as to the applicability of Listing 1.21, so the

ALJ was not obligated to discuss the listing in her decision, *Smith-Johnson*, 579 F. App'x at 432–33; (2) the ALJ's RFC determination is supported by substantial evidence, *McGlothin*, 299 F. App'x at 522; (3) the ALJ addressed proper hypothetical questions to the vocational expert, so the vocational expert's responses to the questions constitute substantial evidence, *Smith Johnson*, 579 F. App'x at 436. The court also finds that the Appeals Council was not required to affirm in its Notice that it reviewed the entire record. *Mitchell*, 771 F.3d at 784–85. Furthermore, as Magistrate Judge King rightly concluded, remand pursuant to Sentence 6 of 42 U.S.C. § 405(g) is unwarranted because Dr. Berdel's undated letter does not meet the requirements for remand. *Ferguson*, 628 F.3d at 276.

Accordingly, Claimant's Objections [DN 21] are **OVERRULED** and Magistrate Judge King's Report and Recommendation [DN 20] is **ADOPTED** in its entirety as the opinion of the court and is incorporated by reference herein. A separate judgment will be entered contemporaneously. There being no just reason for delay, this is a **final Order**.

IT IS SO ORDERED.

January 19, 2024

Charles R. Simpson III, Senior Judge
United States District Court